## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JAN GOODREAU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:19-cv-0269-JEO |
| | ) | |
| US BANK TRUST NATIONAL | ) | |
| ASSOCIATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In this action, Plaintiff Jan Goodreau has alleged a variety of federal and state law claims against Defendants US Bank National Association ("US Bank"), as Trustee of the Igloo Series II Trust, and BSI Financial Services ("BSI").[1] (Doc. 23). The claims are based on allegations that Defendants falsely reported that Goodreau was in default on a mortgage loan and wrongfully initiated foreclosure proceedings on her property, among other things. (*Id.*). Defendants have moved to dismiss all claims contained in the amended complaint except the alleged violations of the Fair Credit Reporting Act and Fair Debt Collection Practices Act.

---

[1] The amended complaint also names Mortgage Electronic Registration System, Inc. ("MERS") as a Defendant. (Doc. 23). The court dismissed MERS on May 1, 2019. (*See* Docs. 34-35).

(Doc. 31 at 2).  For the reasons that follow, the court[2] concludes that the motion is due to be granted in part and denied in part.

## I.     PROCEDURAL HISTORY

Goodreau filed this action in the Circuit Court of Jefferson County, Alabama, asserting fourteen separate claims against Defendants: negligence, wantonness, unjust enrichment, wrongful foreclosure, slander of title, breach of contract, fraud, false light, defamation/libel/slander, violation of the Truth in Lending Act, violation of the Real Estate Settlement Procedures Act, violation of the Fair Credit Reporting Act, violation of the Fair Debt Collection Practices Act, and a claim for declaratory relief.  (Doc. 1-1 at 3-22).  Defendants removed the action to this court and then moved to dismiss the claims contained in the complaint.  (Docs. 1, 6, 8).

In response to the motion to dismiss, Goodreau filed a motion for leave to file an amended complaint, noting the different pleading standards in federal and state court.  (Doc. 15, 16).  The court granted Goodreau's motion to file an amended complaint, (doc. 17), and, after an extension, Goodreau filed her

_____

[2] The action was originally assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and the court's general order of reference dated January 2, 2015. The parties have since consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (Doc. 18).

amended complaint on March 31, 2019.[3]   (Doc. 23).   The amended complaint contains a more detailed set of factual allegations, removed the fraud claim, and set out through the individual counts which Defendant is being sued for each specific claim, but otherwise the differences between the two complaints are minimal. (Compare Docs. 1-1 at 3-22 with Doc. 23).   US Bank and BSI have moved to dismiss all the claims in the amended complaint except the alleged violations of the Fair Credit Reporting Act and Fair Debt Collection Practices Act.   (Doc. 31).   The motion has been fully briefed and is now ripe for decision.

## II.   STANDARD OF REVIEW

Defendants have moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes the dismissal of all or some of the claims in a complaint if the allegations fail to state a claim upon which relief can be granted.   Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."   *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences.   *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008).   However, "courts 'are not bound to accept

---

[3] In light of the filing of the amended complaint, Defendants' original motion to dismiss was deemed moot.   (Doc. 17).

as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Nor is it proper to assume that a plaintiff can prove facts he has not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" i.e., its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

## III.   STATEMENT OF FACTS

Goodreau alleges that she bought property located at 4133 Alston Lane in Birmingham, Alabama, financed the purchase with SouthTrust Mortgage Corporation, and executed a mortgage with MERS, "acting solely as nominee for SouthTrust Mortgage Corporation," on December 1, 2004.  (Doc. 23 ¶ 5).   The loan was later "sold and transferred" and/or assigned to both US Bank and BSI. (*Id*. ¶¶ 7, 10).  Although the allegations of the amended complaint are anything but clear, from what the court can glean from the allegations, Goodreau seems to allege that MERS sold and transferred and/or assigned the loan to "the Trust maintained by US Bank" and BSI serviced the loan.   (*Id*. ¶¶ 7, 9).  Then, at some other point in time, the loan was transferred to BSI and BSI remained the servicer of the loan.   (*Id*.).   Goodreau "disputes the validity" of the transfers and/or assignments, (*id*. ¶¶ 7, 10, 15, 17), but provides no factual basis for this allegation and does not attach a copy of any allegedly defective or invalid transfers, sales or assignments to the amended complaint.

On September 1, 2018, US Bank and BSI initiated foreclosure proceedings on Goodreau's property.  (*Id*. ¶¶ 11, 13, 23, 24).  The foreclosure sale was reported to the national credit bureaus, which damaged Goodreau's credit and reputation. (*Id*. ¶¶ 14, 20, 25).  Additionally, the foreclosure sale date was published in the Alabama Messenger in September, October, November, December 2018 and

January and February 2019, and included false information regarding her alleged default.  (*Id*. ¶ 25).

According to Goodreau, she was not in default on her loan and Defendants knew she was not in default at the time they began foreclosure proceedings.  (*Id*. ¶¶ 13, 16, 24).  She alleges that she was not behind on her payments and that the note was improperly accelerated.  (*Id*. ¶¶ 16, 26).  Despite this knowledge, "Defendants set foreclosure sales for October 30, 2018, January 8, 2019, and February 8, 2019," but they were cancelled.  (*Id*. ¶ 11).

Goodreau alleges that prior to April 2018, Defendants[4] accepted and cashed her monthly payments, but did not properly apply them to her account "pursuant to paragraph 2 of the mortgage contract."  (*Id*. ¶¶ 21, 22).  When she sent her monthly payment to Defendants in October, November and December 2018, Defendants refused the payment and returned it to her without explanation.  (*Id*. ¶ 21).  When Goodreau called and asked about the returned payments, Defendants told her she was in default for failure to make payments without any further explanation.  (*Id*.).  Defendants told Goodreau they would not accept any further payments and her account was being turned over for foreclosure.  (*Id*.).

---

[4] The amended complaint does not identify to which Defendant Goodreau sent these monthly payments or which Defendant she called regarding the returned payments.  Instead, the amended complaint uses the generic "Defendants" throughout these allegations.

On October 26, 2018 and December 13, 2018, Goodreau sent a qualified written request ("QWR")[5] to both BSI and the attorney for BSI. (*Id.* ¶ 99). The letter included a statement for the reasons Goodreau believed there was an error regarding her mortgage loan and included sufficient details for BSI to respond. (*Id.*). BSI never acknowledged receipt of either QWR and never responded to them. (*Id.* ¶ 100).

"[W]hile this action was pending, the Defendants improperly and illegally foreclosed on Goodreau's property on March 1, 2019." (*Id.* ¶ 11). Goodreau, however, alleges that she and her husband currently reside in the property at issue. (*Id.* ¶ 6).

## IV.   DISCUSSION

In her amended complaint, Goodreau states four federal violations, eight state law violations, and a count for declaratory judgment.[6] (Doc. 23 at 8-33). The court begins with the alleged federal violations and then moves to the state law claims.

---

[5] A QWR is written correspondence to the servicer that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

[6]   Goodreau divides many of her state law claims against Defendants  into separate claims.

## A. The Federal Claims

In her amended complaint, Goodreau alleges that BSI violated four federal statutes: the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* (Count Fourteen); the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* (Count Fifteen); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* (Count Sixteen); and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* (Count Seventeen).  (Doc. 23 at 23-33). BSI has moved to dismiss Counts Fourteen and Fifteen.[7]  (Doc. 31 at 2, 17-20).

### 1. TILA

TILA is a remedial consumer protection statute designed to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a); *see Beach v. Ocwen Fed.*

---

[7] The court has serious questions as to whether the amended complaint states a claim under the FCRA and the FDCPA. (Doc. 23 at 26-33 (Counts 16 & 17)).  *See Gregory v. Select Portfolio Servicing, Inc. et al.,* 2016 WL 4540891, *18 (N.D. Ala. Aug. 31, 2016) (dismissing the plaintiff's FCRA claim where the plaintiff failed to plead any facts to suggest that the credit bureaus contacted the furnisher regarding the dispute); *Bush v. v. J.P. Morgan Chase Bank, N.A., et al.,* 2016 WL 324993 (N.D. Ala. Jan. 27, 2016) (same); *Rice v. JP Morgan Chase Bank N.A.,* 2014 WL 3889472, *6 (N.D. Ala. Aug. 5, 2014) (same); *see also Prickett v. BAC Home Loans,* 946 F. Supp. 2d 1236, 1249 (N.D. Ala. 2013) ("Because the Complaint fails to allege facts showing the BANA is a debt collector within the meaning of the FDCPA, Plaintiffs' claim for violation of the FDCPA is subject to dismissal.").  However, because BSI did not move to dismiss these claims, the court will not address them.

*Bank*, 523 U.S. 410, 412 (1998). TILA requires creditors to provide consumers with "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Id*. at 412. TILA provides a private right of action against "any creditor" who violates the requirements of the statute's credit transactions section and allows for actual damages because of the failure and, with certain limitations, statutory damages. 15 U.S.C. § 1640(a).

In Count Fourteen of the amended complaint, Goodreau alleges that BSI violated both TILA and Regulation Z.[8] (Doc. 23 ¶¶ 90-97). Specifically, she alleges that BSI failed to provide required disclosures "prior to consummation" of her loan transaction, failed to make required disclosures "clearly and conspicuously in writing," and failed to "include in the finance charge certain charges imposed . . . [and] payable by plaintiff incident to the extension of credit . . ., thus improperly disclosing the finance charge." (*Id*. ¶ 93). She also alleges BSI made unauthorized charges in the form of attorney fees and other fees not authorized by the mortgage contract, as well as "improperly amortizing the loan." (*Id*. ¶¶ 94, 96). Finally, she contends BSI failed to send proper monthly statements. (*Id*. ¶ 96).

---

[8] Regulation Z, 12 C.F.R. §§ 226.1 et seq., consists of various rules promulgated by the Federal Reserve Board to further the purposes of TILA. *Hendley v. Cameron-Brown Co*., 840 F.2d 831, 833 (11th Cir. 2000).

As stated above, by its plain language, TILA's private right of action applies only to actions against "creditors." 15 U.S.C. § 1604(a). A "creditor" is defined as:

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence. . . .

15 U.S.C. § 1602(g). The civil liability provision of TILA does not apply generally to every person the statute regulates, but only to originating creditors. *Gregory v. Select Portfolio Servicing, Inc.*, 2016 WL 4540891, at *14 (N.D. Ala. Aug. 31, 2016).

Goodreau's factual allegations demonstrate that BSI is not, in fact, the person to whom the debt arising from the loan transaction was initially payable. According to her amended complaint, Goodreau financed the purchase of the home with SouthTrust Mortgage. (Doc. 23 ¶ 5). As such, BSI is not a "creditor" within the meaning of TILA because it is not the party to whom the loan was initially payable. Goodreau's TILA claim against BSI is due to be dismissed.

Additionally, even if the court is incorrect in its conclusion that BSI is a "creditor" within the meaning of TILA, the claim is time-barred. TILA provides for a one-year statute of limitations that begins to run from the date that the borrower entered into the loan transaction. 15 U.S.C. § 1640(e); *In re Smith*, 737

F.2d 1549, 1552 (11th Cir. 1984). The loan here was signed on December 1, 2004, more than thirteen years before the complaint was filed, well outside the limitations period. Goodreau's TILA claim against BSI is due to be dismissed for this separate, additional reason.

## 2. RESPA

In Count Fifteen, Goodreau alleges that BSI violated RESPA by "failing to acknowledge or properly respond to [her] Qualified Written Request (QWR)." (Doc. 23 ¶ 98). RESPA establishes the procedures a loan servicer must follow, and certain actions it must take, upon receiving a QWR from a borrower. 12 U.S.C. § 2605(e). Section 2605(e) of the RESPA requires a loan servicer to send a written acknowledgement of the borrower's QWR within five days and a written response to the QWR within thirty days. 12 U.S.C. § 2605 (e)(1)(A), (e)(2). Failure to adequately respond to a QWR results in liability "to the borrower for each such failure in . . . an amount equal to the sum of any actual damages to the borrower as a result of the failure. . . ." 12 U.S.C. § 2605(f)(1)(A). To succeed on a claim under § 2605(e), Plaintiff "must show: (1) that Defendant is a servicer; (2) that Defendant received a QWR from the borrower; (3) that the QWR related to the servicing of the loan; (4) that Defendant failed to respond adequately; and (5) that Plaintiff[ is] entitled to actual or statutory damages." *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1292 (N.D. Ala. 2013).

BSI argues that Goodreau's RESPA claim should be dismissed because she has not pleaded sufficient facts to establish that her QWR met the requirements of § 2605(e)(1)(B). (Doc. 31 at 18-24). Although it is an extremely close question, the court is satisfied that Goodreau adequately pleaded her RESPA claim and that the claim should not be dismissed at this time.[9] Goodreau alleges that she sent QWRs to BSI on October 26, 2018 and December 13, 2018; that BSI never responded to the QWRs; and that she was damaged by BSI's failure to provide her with the requested information about her loan because, without the requested information, she was unable to cure any alleged default or stop the foreclosure proceedings on her own and had to retain and pay an attorney to stop the foreclosure. (Doc. 23 ¶¶ 100-01). The court is satisfied that these allegations are minimally sufficient to state a claim for violation of RESPA, that the claim is at least plausible on its face, and provides BSI with fair notice of the basis for the claim. Accordingly, BSI's motion to dismiss Goodreau's RESPA claim is due to be denied.

That being said, the court acknowledges BSI's argument and other decisions of district courts within the Eleventh Circuit regarding Goodreau's failure to attach the purported QWRs to her amended complaint and failure to explain the alleged

---

[9] The court notes Goodreau's opposition to the motion to dismiss completely misses the mark and does not address the arguments made by BSI. (Doc. 40 at 29-31). Plaintiff devotes her entire argument to explaining why US Bank should be held vicariously liable, but the amended complaint does not assert a RESPA claim against US Bank.

errors referenced in the letters or how they related to the servicing of her mortgage. (Doc. 31 at 19-20). While the court will not require Goodreau to supplement her amended complaint with the alleged QWRs, the court encourages BSI to file a motion for summary judgment as soon as practicable if it determines in discovery that the QWRs are deficient as a matter of law.

## B. The State Law Claims

In her amended complaint, Goodreau also asserts state law tort claims based on negligence (Counts One and Two), wantonness (Counts Three and Four), wrongful foreclosure (Count Seven), slander of title (Count Eight), false light (Counts Eleven and Twelve), and defamation/libel/slander (Count Thirteen), along with state law claims for unjust enrichment (Counts Five and Six) and breach of contract (Counts Nine and Ten). All the claims are brought against both Defendants, except the claims for wrongful foreclosure, slander of title and defamation/libel/slander are brought only against US Bank. Defendants have moved to dismiss all the state law claims. (Doc. 31).

### 1. FCRA Preemption

Defendants argue that Goodreau's negligence, wantonness, false light and defamation/libel/slander claims, to the extent they are based on alleged inaccurate credit reporting to credit agencies, are preempted by the FCRA. (Doc. 31 at 8-9, 16-17). Goodreau does not respond in any way to this argument in her opposition

brief. (*See* Doc. 40). Generally, a plaintiff's failure to respond to a defendant's arguments is interpreted by courts as a decision to abandon those claims. *See Coal. for the Abolition of Marijuana Prohibition*, 219 F.3d at 1326 ("failure to brief and argue [an] issue during the proceedings before [a] district court is ground for finding that the issue has been abandoned"); *Kramer v. Gwinnett County*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga.) ("a party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."), *aff'd*, 116 F. App'x 253 (11th Cir. 2004) (table decision). That being said, Plaintiff does address her state law claims on the merits, so the court does not deem them completely abandoned notwithstanding the fact that Plaintiff failed to address the preemption issue.

There are two potentially applicable FCRA preemption provisions, 15 U.S.C. §§ 1681h(e) and 1681t(b)(1)(F). Section 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

Section 1681t(b)(1)(F) provides:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

When dealing with a furnisher of credit information, these two provisions are difficult to reconcile; "§ 1681t(b)(1)(F) is an absolute bar to state causes of action, while § 1681h(e) only bars claims [where] the information was 'furnished with malice or willful intent to injure such consumer.'" *Dial v. Midland Funding, LLC*, 2015 WL 751690, at *6 (N.D. Ala. Feb. 23, 2015).

As United States District Judge Abdul K. Kallon observed, "FCRA preemption of state law torts is an area of little agreement among this district's judges." *Hamilton v. Midland Funding, LLC*, 2015 WL 5084234, at *6 (N.D. Ala. Aug. 27, 2015); *see Taylor v. Midland Funding*, LLC, 2015 WL 4670314, at *9-12(N.D. Ala. Aug. 6, 2015), and *Dial*, 2015 WL 751690 at *6-7, for overviews of the various approaches to FCRA preemption taken by the judges in this district. However, as this court noted in *Bush v. JP Morgan Chase Bank, N.A.*, there appears to be a growing consensus that tort claims based on a furnisher's alleged reporting of inaccurate credit information to credit agencies fall within the scope of section 1681t(b)(1)(F), not section 1681h(e), and are preempted:

> "The three [FCRA] sections covered by § 1681h(e)—1681g, 1681h, and 1681m—regulate disclosures **to consumers** and duties of **users** of information. These duties do not concern a **furnisher's** duties of reporting and investigation. Section 1681t(b) covers furnishers." *Schlueter v. BellSouth Tellecomms.*, 770 F. Supp. 2d 1204, 1209 (N.D.

Ala. 2010). Section 1681t(b)(1)(F) preempts "the laws of any state" with respect to any subject matter regulated under § 1681s-2, and § 1681s-2, in turn, imposes duties on furnishers to provide accurate credit information to credit agencies, to investigate credit disputes after notification, and to correct inaccurate information. *See* § 1681s-2(a) and (b). Consequently, the court agrees with the growing trend finding that §1681t(b)(1)(F) bars state law tort claims based on inaccurate credit reporting by furnishers. *See Schlueter*, 770 F. Supp. 2d at 1210- 11 (finding that § 1681t(b)(1)(F) barred the plaintiffs' state law claims against BellSouth, including their claims for negligent, reckless, and wanton conduct and misrepresentation, where the claims arose out of BellSouth's furnishing of information to credit reporting agencies); *Hamilton*, 2015 WL 5084234, at *7 (finding that § 1681t(a)(1)(F) barred the plaintiff's invasion of privacy claim based on the defendant's credit reporting."); *Taylor*, 2015 WL 4670314, at *13 (same); *Ferrell v. Midland Funding, LLC*, 2015 WL 2450615, at *6 (N.D. Ala. May 22, 2015) (same); *Dial*, 2015 WL 751690, at *7 (same); *Williams v. Student Loan Guarantee Found. of Arkansas*, 2015 WL 241428, at *13 (N.D. Ala. Jan. 20, 2015) ("§ 1681t(b)(1)(F) preempts Williams's state-law claims to the extent they address the subject matter regulated under § 1681-s2."); *Barnett v. JP Morgan Chase Bank, Nat. Ass'n*, 2013 WL 3242739, at *13 (N.D. Ala. June 26, 2013) (holding that § 1681t(b)(1)(F) preempted the plaintiff from pursuing defamation, libel, or slander claims against Chase arising out of any false reports to credit agencies).

2016 WL 324993, at * 7 (emphasis in original).

Here, Goodreau's negligence and wantonness claims are based, at least in part, on the allegation that US Bank and BSI failed to ensure that the credit information they disseminated to the national credit bureaus rose to the level of maximum accuracy and was not false, libelous, or slanderous. (Doc. 23 ¶¶ 28, 31, 34, 39). The claims are also based on allegations that US Bank and BSI failed to properly train their employees on the thorough investigation of disputed accounts

and failed to remove their adverse reporting once she disputed it. (*Id*.). Goodreau's false light claim is based, in part, on the alleged "offensive, untrue and inaccurate reports" to the national reporting media. (*Id*. ¶¶ 72-73). Finally, while the majority of her defamation/libel/slander claim is based on the information contained in the publication of the foreclosure sale, a broad reading of the allegations also includes a claim based on reporting to credit agencies. (*Id*. ¶¶ 79). As such, the court concludes that these state law claims are based, at least in part, on US Bank and BSI's alleged failure to fulfill its duties under 15 U.S.C. § 1681s-2. To the extent that Goodreau's negligence, wantonness, fraud, false light, libel/slander/defamation claims are based on such allegations, those claims are preempted by the FCRA. *See* 15 U.S.C. § 1681t(b)(1)(F). To the extent that they are not preempted, the court addresses Goodreau's state law claims below.

## 2. Negligence and Wantonness

In Counts One through Four of the amended complaint, Goodreau alleges US Bank and BSI engaged in negligent and wanton conduct regarding the servicing of her loan, attempted to collect funds not owed, caused her property insurance to be cancelled, negligently defaulted Goodreau, and attempted to complete a foreclosure sale. (Doc. 23 ¶¶ 28, 31, 34, 39). Additionally, Goodreau claims US Bank and BSI negligently and wantonly failed to prevent the dissemination of inaccurate and libelous information to others, including the credit

bureaus and the general public. (*Id*.). Finally, Goodreau contends US Bank and BSI negligently and wantonly trained and supervised the employees responsible for her mortgage account. (*Id*.). In addition to the preemption argument, Defendants contend these claims fail as a matter of law because Alabama law does not recognize a cause of action for negligent or wanton servicing of a mortgage account. (Doc. 26 at 5-6). The court agrees.

"To establish negligence, [a] plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (quoting *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992)). "To establish wantonness, [a] plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Id*. Put another way, wantonness is not just a higher level of negligence, but involves "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (emphasis in original).

Goodreau's claims for negligence and wantonness fail as a matter of law because "Alabama law does not recognize a tort-like cause of action for the breach

of a duty created by contract." *Blake v. Bank of America, N.A.,* 845 F. Supp. 2d 1206, 1210-11 (M.D. Ala. 2012) (citations omitted). Any obligations Defendants owed to Goodreau arose from the legal relationship created by the loan documents. These obligations do not give rise to a duty of reasonable care generally owed to members of the public. *James v. Nationstar Mortg., LLC*, 92 F. Supp. 3d 1190, 1200 (S.D. Ala. 2015). Because the duty Goodreau contends Defendants breached is based on contractual agreements, her negligence and wantonness claims are not legally cognizable under Alabama law. *See U.S. Bank Nat'l Ass'n v. Shepherd*, 202 So. 3d 302, 314-15 (Ala. 2015) (holding that wantonness claims for servicing and handling mortgages are improper because the underlying duties are established by contract); *see also James*, 92 F. Supp. 3d at 1198 (recognizing "a veritable avalanche of recent (and apparently unanimous) federal precedent has found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law").

Goodreau's negligence and wantonness claims also include allegations that Defendants failed to properly train and/or supervise its employees with regard to the handling of her loan account. (Doc. 23 ¶¶ 28, 31, 34, 39). In a claim for negligent or wanton training/supervision, "the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him." *Thompson v. Havard*, 235 So. 2d 853,

858 (Ala. 1970).  Goodreau has not pleaded any acts regarding how US Bank or BSI employees handled her loan, what training and supervision they received, or what notice either Defendant had of their alleged incompetency.  She has offered no facts from which the court could even infer that she has a plausible claim against either Defendant for failure to properly train and/or supervise their employees.  Accordingly, Defendants' motion to dismiss Plaintiff's negligence and wantonness claims is due to be granted.[10]

### 3. Unjust Enrichment

Counts Five and Six of the amended complaint allege US Bank and BSI were unjustly enriched by the payment of fees, insurance proceeds, and equity in Goodreau's home in connection with the foreclosure attempts and actual foreclosure.  (Doc. 23 ¶¶ 44, 47).  Defendants argue the unjust enrichment claim fails because a valid contract existed between the parties.  (Doc. 31 at 11-12).  Instead of addressing this argument, Goodreau recites the elements of an unjust enrichment claim and reasserts her allegations.  (Doc. 40 at 20-21).  The court is unpersuaded by Goodreau's argument as the law is so far in Defendants' favor.

---

[10] The court rejects Plaintiff's attempt to rescue her negligence and wantonness claims by arguing that "federal law and regulations impose a duty of affirmative care on the servicing Defendant, BSI."  (Doc. 40 at 17).  Similar arguments have been soundly rejected.  *James v. Nationstar Mortg.*, LLC, 92 F. Supp. 3d 1190, 1200 n.9 (S.D. Ala. 2015); *Bush*, 2016 WL 324993 at * 9.

"The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1193 (Ala. 2008) (emphasis and internal quotation marks omitted). However, "the existence of an express contract extinguishe[s] an unjust enrichment claim altogether because unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law." *Univalor Trust, SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016). Here, the amended complaint clearly alleges a written contract between the parties. (Doc. 23 ¶ 5). Because of the existence of a contract, Goodreau's claim for unjust enrichment is due to be dismissed. *See Prickett v. BAC Home Loan,* 946 F. Supp. 2d 1236, 1248 (N.D. Ala. 2013); *Bias v. Cenlar Agency, Inc*., 2018 WL 2365428, at *4 (N.D. Ala. 2018); *Rice*, 2014 WL 3889472, at *11.

### 4. Wrongful Foreclosure

In Count Seven, Goodreau alleges US Bank "wrongfully initiated and attempted to conduct a foreclosure proceeding against" her. (Doc. 23 ¶ 50). "Alabama has long recognized a cause of action for 'wrongful foreclosure' arising out of the exercise of a power-of-sale provision in a mortgage." *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012) (defining a wrongful-foreclosure claim where "a mortgagee uses the power of sale given under a mortgage for a

purpose other than to secure the debt owed by the mortgagor"). "The touchstone of such a claim is that the mortgagee must 'use[ ] the power of sale.'" *Selman v. CitiMortgage, Inc.*, 2013 WL 838193, at *7 (S.D. Ala. Mar. 5, 2013) (quoting *Reeves Cedarhurst Development Corp. v. First Am. Fed. Sav. & Loan Ass'n*, 607 So. 2d 180, 182 (Ala. 1992)). That being said, "it is the act of executing and delivering a deed that 'complete[s] the foreclosure.'" *Ex parte GMAC Mortg., LLC*, 176 So. 3d 845, 850 (Ala. 2013) (quoting *Ritter v. Moseley*, 148 So. 143, 147 (Ala. 1933)); *see also Ex parte Lynn*, 727 So.2d 90, 91 (Ala. 1999) ("[f]or an effective sale of property, there must be an execution, and delivery, of a deed to the property"). "[I]t is the execution and delivery of a deed by which the power of sale ultimately is exercised or 'executed' and, in turn, the foreclosure of the mortgagor's rights actually occurs." *Ex parte GMAC Mortg., LLC*, 176 So.3d at 851.

Here, Goodreau alleges that a foreclosure sale took place on March 1, 2019. (Doc. 23 ¶¶ 11, 12, 23). Goodreau also alleges that she and her husband currently reside at the property. (*Id*. ¶ 6). There are no allegations regarding whether the execution and delivery of the deed have occurred. It would seem from the combination of the two allegations cited above that such has not happened. Regardless, the allegations in the amended complaint fail to state a claim for wrongful foreclosure under Alabama law, and Count Seven is due to be dismissed.

### 5. Slander of Title

Count Eight of the amended complaint alleges slander of title against US Bank. (Doc. 30 ¶¶ 53-54). The elements of slander of title under Alabama law are:

> (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Folmar v. Empire Fire & Marine Ins. Co.,* 856 So. 2d 807, 809 (Ala. 2003) (citations omitted). For purposes of such a slander claim, malice may be proven with evidence that the defendant "intentionally disparaged the plaintiff's title" or "[']recklessly disparaged it without information sufficient to support a bona fide belief' in the veracity of the disparaging statement." *Roden v. Wright*, 646 So. 2d 605, 611 (Ala. 1994) (internal modifications and emphases omitted) (quoting *Harrison v. Mitchell*, 391 So. 2d 1038, 1041 (Ala. Civ. App. 1980)). To plead special damages, a plaintiff must claim that the slanderous publication interrupted or injured a "dealing of the plaintiff with his property" or that he or she incurred expenses to remedy the injurious effect of the slander. *Prickett*, 946 F. Supp. 2d at 1244 (quoting *Ebersole v. Fields*, 62 So. 73, 75 (Ala. 1913)).

Goodreau alleges that "by conducting a foreclosure sale on the property and in recording an invalid foreclosure deed," US Bank has "caused a cloud to be

placed on the title of the property." (Doc. 23 ¶ 53). She further contends that "as a proximate cause of" US Bank's slander of title, "she was caused to suffer injuries and damages and claims all damages allowable under law." (*Id*. ¶ 54). Defendant contends Goodreau's slander of title claim is deficient because she failed to allege malice or special damages. (Doc. 31 at 14-15). The court agrees.

Alabama law requires a plaintiff to distinctly set out the special damages suffered from the slander. *Merchants Nat. Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981); *Prickett*, 946 F. Supp. 2d at 1244 (quoting *Ebersole*, 62 So. at 75). Plaintiff's damages allegation in the amended complaint does not aver that she suffered the types of damages described in *Prickett*. (Doc. 23 ¶ 54). Moreover, Goodreau's averment that the foreclosure sale notice "caused a cloud to be placed on the title of the property," (*id*. ¶ 53), is a general allegation of damages that comes nowhere close to pleading the type of special damages required for a viable slander of title action. *See Bush,* 2016 WL 324993, at *11 (dismissing a slander of title claim with nearly identical "cloud of title" allegations). Because Goodreau's amended complaint fails to plausibly plead the elements of malice and special damages, her claim for slander of title against US Bank fails as a matter of law and is due to be dismissed.

### 6. Breach of Contract

Counts Nine and Ten of the amended complaint allege breach of contract claims against US Bank and BSI. (Doc. 23 ¶¶ 55-). "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (internal quotations and citations omitted). Defendants challenge only the first element – whether there was a contract binding the parties. (Doc. 31 at 15-16). Defendants contend that the amended complaint specifically alleges "there was not a valid contract between the parties." (*Id*. at 16). While the court agrees with Defendants that Goodreau challenges the validity of the alleged sale/transfer/assignment of the mortgage to both US Bank and BSI, (*see* doc. 23 ¶¶ 7, 10, 15, 17), the amended complaint is also abundantly clear that Goodreau is asserting alternative theories, (*see id.* at ns. 3, 6, 7, 8). And there are allegations in the amended complaint asserting that the note and mortgage were sold/transferred/assigned to both US Bank and Nationstar. (*Id*. ¶¶ 7, 9, 10). Although by no means clear as to when or how this sale and/or transfer occurred, the allegations are minimally sufficient to allege the existence of a contract between Plaintiff and both Defendants. As such, the motion to dismiss the breach of contract claims are due to be denied.

### 7. False Light

In Counts Eleven and Twelve of the amended complaint, Goodreau claims that US Bank and BSI made inaccurate reports on "the internet and media and newspaper and to her homeowner insurance carrier." (Doc. 23 ¶¶ 69, 74). Defendants argue only that these claims are preempted by the FCRA. (Doc. 31 at 16-17). The court has already stated that to the extent that the claim is premised on reporting to credit agencies, they are preempted. However, the allegations contained in the amended complaint clearly also address the furnishing of information to other groups, specifically the internet, media, newspaper and Goodreau's homeowner insurance carrier. (Doc. 23 ¶¶ 69, 74). Defendants do not address these allegations in their motion to dismiss. Because the court can only address arguments presented to it and Defendants did not address the false light allegations contained in the amended complaint, the motion to dismiss these claims is due to be denied.[11]

---

[11] The court has concerns as to whether the amended complaint states a claim for false light. *See Rice v. Seterus, Inc.*, 2018 WL 513345, at * 7-8 (N.D. Ala. Jan., 23, 2018) (dismissal of false light claim premised on statements made to "the national media" and plaintiff's homeowner's insurance carrier, in an action filed by Plaintiff's counsel); *Jackson v. Bank of Mellon*, 2016 WL 4942085, at *10 (S.D. Ala. July 19, 2016) (recommending, in an action filed by Plaintiff's counsel, the dismissal of a similar false light claim premised on statements made to the "credit reporting media" and an insurance carrier for failure to plead the publicity element), *adopted*, 2016 WL 4942012 (S.D. Ala. Sept. 15, 2016).

## 8. Defamation, Slander, and Libel

In Count Thirteen of the amended complaint, Goodreau alleges that US Bank published and communicated false and defamatory statements that she was in default. (Doc. 23 ¶¶ 77-89). Specifically, Goodreau alleges that the foreclosure sale notices in the Alabama Reporter and on the internet were defamatory and that US Bank either knew they were false or recklessly disregarded their potential falsity. (*Id*. ¶¶ 77, 80, 82, 88). Goodreau pleads reputational damages from Defendant's publication. (*Id*. ¶¶ 83, 86, 89).

There are two types of defamation: libel, which involves the use of print media to publish a defamatory comment; and slander, which involves the oral expression of a defamatory comment. *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999). Because Plaintiff's claim is based on written communications, the foreclosure sale notices, her claim is in reality one for libel, not slander.[12]

Like the false light claims, Defendant argues only that the libel claim is due to be dismissed because it is preempted by the FCRA. (Doc. 31 at 17). The court has already stated that to the extent that the claim is premised on reporting to credit agencies, they are preempted. However, the allegations contained in the amended

---

[12] Although paragraph 84 of the amended complaint states the communications were oral and/or written, the specific allegations relating to this claim only refer to written communications. (*See* Doc. 23 ¶¶ 77, 80, 86).

complaint clearly also address the written communication to other third parties via the Alabama Messenger and the internet. (Doc. 23 ¶¶ 77, 80). Again, US Bank does not address these allegations in the motion to dismiss. Because the court can only address arguments presented to it and Defendant did not address the libel allegations contained in the amended complaint, the motion to dismiss these claims is due to be denied.[13]

## C. Leave to Amend

Throughout her response in opposition to Defendants' motion to dismiss, Goodreau requests leave to amend her already amended complaint to correct any deficiencies in all her claims, except her claims for slander of title, defamation, libel, slander and false light and her RESPA claim. (Doc. 40 at 20-22, 26, 29, 31). The court declines to allow leave to amend. Goodreau was placed on notice of the deficiencies to her complaint with Defendants' first motion to dismiss. (Doc. 8). She has had one opportunity to correct the deficiencies and has failed to do so. In view of the opportunity already afforded to Goodreau to amend her complaint, the allegations contained in the amended complaint, and the foregoing legal determinations by the court, there is no reason to believe Goodreau will be able to correct the deficiencies if she is given a second bite at the apple.

---

[13] Again, the court has concerns as to whether the amended complaint adequately states a claim for libel. *See Jackson v. Bank of New York Mellon*, 2016 WL 4942085 (S.D. Ala. July 19, 2016) (dismissal of similar claim for failure to plead special harm caused by the publication).

## V.    CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is due to be granted in part and denied in part as follows: Goodreau's negligence, wantonness, unjust enrichment, wrongful foreclosure, slander of title, and TILA claims are due to be dismissed; Goodreau's breach of contract, false light, libel, and RESPA claims remain.[14] Additionally, Goodreau's count for declaratory relief will remain.  To the extent Goodreau requests permission to file a second amended complaint, the request is due to be denied.[15]   An order consistent with this memorandum opinion will be entered.

**DATED** this 25th day of June, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge

---

[14] The FCRA and FDCPA claims remain as well since Defendants did not move for dismissal of those claims.

[15] As this court has previously warned counsel for Plaintiff, Plaintiff's amended complaint comes close to running afoul of the confines of Rule 11, particularly in light of the rulings of the Eleventh Circuit and rulings of this court regarding other complaints filed by counsel for Plaintiff, that are strikingly similar, if not verbatim in some places.  *See, e.g., Perry v. Matrix Fin. Servs. Corp.*, 2019 WL 1597883 (N.D. Ala. April 15, 2019); *Bias v. Cenlar Agency, Inc.,* 2018 WL 2365428, (N.D. Ala. May 24, 2018), *Rice,* 2018 WL 513345 (N.D. Ala. Jan. 23, 2018); *Gregory.,* 2016 WL 4540891 (N.D. Ala. Aug. 31, 2016); *Zanaty. Wells Fargo Bank, N.A., et al.,* 2016 WL 6610443 (N.D. Ala. Nov. 9, 2016); *Bush.,* 2016 WL 324993 (N.D. Ala. Jan. 27, 2016).  Counsel for Plaintiff should take note of the repeated rejection as a matter of law of certain claims by the courts in this district.  It is a waste of judicial resources to continually analyze and reject these claims, not to mention needlessly expensive for the defendants to file lengthy motions to dismiss claims that have been repeatedly rejected.