FILED

2021 Dec-30  PM 12:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| JAN GOODREAU, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  Case No. 2:19-cv-00269-SGC |
| | ) |
| US BANK TRUST NATIONAL | ) |
| ASSOCIATION, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION[1]

This case arises out of a dispute over a residential mortgage executed by the plaintiff, Jan Goodreau.  Presently pending is the motion for summary judgment as to all claims, filed by the remaining defendants, US Bank National Association as Trustee of the Igloo Series II Trust, a Delaware statutory trust ("US Bank"), and BSI Financial Services ("BSI").[2]  (Doc. 55)[3]  The motion is fully briefed and ripe for adjudication.  (Docs. 56, 64, 65).  For the reasons discussed below, the motion is due to be granted in its entirety.

## I.    PROCEDURAL HISTORY

---

[1] The parties consented to dispositive magistrate judge jurisdiction under 28 U.S.C. § 636(c).  (Doc. 18).

[2] Goodreau's claims against Mortgage Electronic Registration System, Inc. ("MERS") were dismissed by the previously-assigned judge on May 1, 2019.  (Docs. 34-35).

[3] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF document system and appear in the following format: (Doc. __ at __).

Goodreau filed this action in Jefferson County Circuit Court, asserting fourteen separate claims against the defendants: negligence, wantonness, unjust enrichment, wrongful foreclosure, slander of title, breach of contract, fraud, false light, defamation/libel/slander, violation of the Truth in Lending Act, violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and declaratory relief.  (Doc. 1-1 at 3-22).  The defendants removed to this district court and, after Goodreau amended, moved to dismiss.  (Docs. 1, 23, 31). The previously-assigned judge partially granted the motion to dismiss, leaving Goodreau with seven claims: (1) breach of contract; (2) false light; (3) libel; (4) RESPA violations; (5) FCRA violations; (6) FDCPA violations; and (7) declaratory judgment.  (Doc. 44; *see* Doc. 45).  Subsequently, this matter was reassigned to the undersigned.

## II.    STANDARD OF REVIEW

Under Rule 56(c) of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for

summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id*. at 249.

### III.   FACTS

At the outset, it must be noted that the defendants' brief in support of their motion for summary judgment includes pinpoint citations to specific evidence in the record to support its factual narrative. (Doc. 56 at 5-18). Conversely, Goodreau's opposition includes virtually no citations to the record. (*See generally* Doc. 64).

Indeed, Goodreau's factual narrative reads more like a complaint than an opposition to a Rule 56 motion. This is unsurprising since Goodreau's fact section consists almost entirely of a word-for-word regurgitation of the facts set out in her brief in opposition to the defendants' motion to dismiss. (*Compare* Doc. 64 at 4-9 *with* Doc. 40 at 6-11). In turn, the facts in Goodreau's opposition to the motion to dismiss were a nearly verbatim repetition of the factual allegations in the amended complaint. (*Compare* Doc. 40 at 6-11 *with* Doc. 23 at 3-8). The following facts are drawn from the portions of the record cited to in this case. *See* Rule 56(c).

In 2004, Goodreau[4] entered into a residential loan agreement with SouthTrust Mortgage Corporation in the amount of $296,550.00. (Doc. 57-1 at 4; *see* Doc. 56 at 5; Doc. 64 at 4). The loan was secured by a note and mortgage on Goodreau's home, located at 4133 Alston Lane, Birmingham, Alabama (the "Property"). (Doc. 57-1 at 12-37). Goodreau testified she understood the mortgage provided a power of sale under which failure to make timely payments could result in a foreclosure sale. (Doc. 57-2 at 19). Among the documents Goodreau signed were provisions allowing the right to collect her mortgage payments to be transferred to other mortgage servicers. (*Id.* at 23; *see* Doc. 56 at 6-7). After a series of assignments over the following years, the mortgage was assigned to US Bank. (*See* Doc. 57-1 at

---

[4] The parties agree Goodreau is also known as "Jan Smith," which is how she signed the documents at issue here. (*See* Doc. 56 at 5; Doc. 64 at 4; Doc. 57-1 at 4).

4-6).[5]   On July 18, 2012, BSI sent Goodreau two letters: one notified her the mortgage had been sold to US Bank on June 27, 2012, and that BSI was the servicer of the mortgage; the other provided information regarding BSI.   (*Id.* at 55-58). Although Goodreau's payments had been delinquent, the loan was not declared to be in default prior to BSI taking over as servicer.   (*See id.* at 7).

Goodreau testified that, prior to US Bank's acquisition of the mortgage, she had gotten behind on her payments; she filed for bankruptcy in 2009, and refiled in 2011.   (Doc. 57-2 at 16-17).   Goodreau's counsel explained the 2011 refiling was under Chapter 13; it was confirmed later that year and dismissed for other reasons on July 14, 2017.   (*Id.* at 17).   Goodreau testified to her understanding that bankruptcy would protect her from foreclosure.   (*Id.* at 27).   Goodreau's husband, James Goodreau, testified that the resolution of the bankruptcy proceeding included an agreement whereby BSI would consider Goodreau current on the loan by adding missed payments to the end of the term.   (Doc. 57-3 at 16-17).   However, BSI's records do not reflect any such agreement, and Goodreau has not presented any documents or evidence to substantiate her contention.   (Doc. 57-1 at 8).

Meanwhile, BSI wrote Goodreau on three occasions informing her of

---

[5] The chain of custody regarding the mortgage is reflected in a series of assignments which were recorded in Jefferson County Probate Court. (Doc. 57-1 at 39, 45, 47, 49, 52). While Goodreau questions the validity of the assignment to US Bank, she has not produced or pointed to any specific evidence to support this contention; nor has Goodreau pointed to any allegedly ineffective assignment. (*See* Doc. 64 at 6).

individuals and/or entities she could contact to discuss loss mitigation options, including: (1) a November 4, 2013 letter identifying 3Point Real Estate Solutions, LLC, as offering loss mitigation assistance; (2) an August 15, 2017 letter providing Goodreau with a single point of contact—a BSI employee—to review loss mitigation options; and (3) a May 9, 2018 letter identifying another BSI single point of contact. (Doc. 57-1 at 60, 63; Doc. 57-2 at 71). It does not appear Goodreau spoke to any of the entities or individuals identified by BSI as providing loss mitigation assistance. (Doc. 57-2 at 22-23).

After Goodreau's bankruptcy was dismissed in July 2017, BSI sent Goodreau a series of correspondence notifying her of: (1) her default—based on missing 11 payments beginning on October 1, 2016—and BSI's intent to accelerate the loan; (2) the acceleration of the loan; (3) the publication of an impending foreclosure sale, initially scheduled for January 8, 2019; and (4) the postponement of the foreclosure sale until February 8, 2019. (Doc. 57-1 at 67, 71, 76, 81). It appears the foreclosure sale was cancelled.[6] Goodreau and her husband continue to reside at the Property, which has not been foreclosed. (*See* Doc. 57-2 at 6; Doc. 64 at 5; Doc. 57-1 at 9).

Meanwhile, Goodreau's counsel sent BSI a qualified written request

---

[6] Goodreau's opposition asserts the defendants foreclosed on the Property on March 1, 2019, "although the foreclosure deed was actually never signed and later destroyed." (Doc. 64 at 8). This naked contention cites to no evidence for support.

("QWR")[7] on October 26, 2018.  (Doc. 57-1 at 87-88).  BSI received the QWR on

October 29, 2018, and sent a letter to counsel acknowledging receipt on November

5, 2018.  (*Id.* at 84, 113-17).  BSI responded to the QWR via letters dated November

8, 2018, and November 16, 2018.  (*Id.* at 84-112).  Goodreau alleges she sent a

second QWR via certified mail on December 13, 2018, and that BSI never

responded.  (Doc. 64 at 37).  BSI has offered evidence, in the form of an affidavit

from a custodian of its records, that it never received the second QWR.  (Doc. 57-1

at 9).  In any event, BSI did not respond to the second QWR.  Goodreau testified she

never contacted a credit rating agency or filed a dispute regarding her credit.  (Doc.

57-2 at 32).

## IV.   DISCUSSION

The defendants assert a number of arguments in support of the motion for

summary judgment.  (Doc. 56).  This opinion does not address all of the arguments—

only those necessary to dispose of each claim.  The claims are addressed in turn.

### A.   **Breach of Contract**

"The elements of a breach-of-contract claim under Alabama law are (1) a valid

contract binding the parties; (2) the plaintiff's performance under the contract; (3)

---

[7] A QWR is written correspondence to the servicer that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).  Here, Goodreau's breach of contract claims are premised on her allegations the defendants breached the mortgage agreement by failing to apply payments she made and by failing to provide a proper notice of default and acceleration. (*See* Doc. 23 at 15-19).

The defendants contend Goodreau cannot show her own performance, their nonperformance, or damages.   (Doc. 56 at 19-22).   Regarding Goodreau's performance, the defendants point to her testimony that she defaulted on mortgage payments as early as 2009; the defendants further note Goodreau did not respond to BSI's invitations to explore her loss mitigation options. (*Id.* at 21-22).  Goodreau's brief in opposition to the motion for summary judgment does not address the defendants' arguments regarding her own admitted default by missing mortgage payments.   (Doc. 64 at 29-35).   Instead, Goodreau's opposition relies on her unsupported assertions that the notice of default and acceleration was deficient in some unexplained manner and that the defendants failed to apply some unspecified mortgage payments. (*Id.*).  These conclusory statements are insufficient to defeat the defendants' properly supported motion for summary judgment.

Accordingly, there are no genuine issues of material fact concerning Goodreau's non-performance, and the defendants are entitled to judgment as a matter of law on her claims for breach of contract. *See Bias v. Cenlar Agency, Inc.*,

No. 15-768-SGC, 2018 WL 2365428, *5 (N.D. Ala. *entered* May 24, 2018) (granting summary judgment to defendant on claim for breach of mortgage contract where plaintiff testified she defaulted by missing payments); *McLaughlin v. Ocwen Loan Serv., Inc.,* No. 16-2041-AKK, 2018 WL 3126752, *4-*5 (N.D. Ala. *entered* June 26, 2018); *see also Adams v. Bank of Am., N.A.,* 237 F. Supp. 3d 1189, 1202 (N.D. Ala. 2017) (unsupported allegations of plaintiff's performance insufficient to defeat properly supported motion for summary judgment).

### B.     False Light

The amended complaint alleges the defendants made inaccurate reports on "the internet and media and newspaper and to her homeowner insurance carrier." (Doc. 23 at 20-21).[8]   The crux of Goodreau's claims for false light is that the publication of the foreclosure sale in the newspaper and online implied she was in default. (*See id.*).  As suggested by the name of the tort, a claim of false light requires the publication of *false* information.  *Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004).   In their motion for summary judgment, the defendants rely on Goodreau's testimony that she missed mortgage payments to show the truth of her default.  (Doc. 56 at 23-25).  Goodreau did not respond to the defendants' arguments, and in any event, the court agrees with the defendants' reasoning.  (*See generally*

---

[8] To the extent this claim was premised on reporting to credit agencies, the court ruled at the motion to dismiss stage that it was preempted by the FCRA. (*See* Doc. 44 at 26).

Doc. 64).   *See Bias*, 2018 WL 2365428 at *6 (granting summary judgment to defendant on false light claim where plaintiff admitted she was in default); *McLaughlin*, 2018 WL 3126752 at *5 (granting summary judgment on false light claim under similar circumstances and noting, "[t]o the extent that the Plaintiffs were in fact current on their mortgage, they should have produced the relevant evidence in opposition to the motion").   Accordingly, there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law on Goodreau's false light claim.

## C.   Libel

Like Goodreau's claim for false light, her libel claim relies on the publication of the foreclosure sale in the newspaper.   (*See* Doc. 64 at 27).   Also like the false light claim, any claim for libel is doomed by Goodreau's testimony that she missed mortgage payments and, thus, was in default.   *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003) (among the requirements for defamation are a "false . . . statement concerning the plaintiff"); *see Bias*, 2018 WL 2365428 at *6 (granting summary judgment to defendant on libel claim where plaintiff admitted she was in default); *Adams*, 237 F. Supp. 3d at 1202 (same).   Accordingly, for the same reasons stated above, there are no genuine issues of material fact and the defendants are entitled to summary judgment on Goodreau's claim for libel.

**D.    RESPA**

Goodreau's RESPA claim concerns the QWRs she sent to BSI.  RESPA establishes the procedures a loan servicer must follow, and certain actions it must take, upon receiving a QWR from a borrower.  12 U.S.C. § 2605(e).  Upon receipt of a QWR, a loan servicer must send a written acknowledgement within five business days and a written response to the QWR within thirty business days.  12 U.S.C. § 2605 (e)(1)(A), (e)(2).  Failure to adequately respond to a QWR results in liability "to the borrower for each such failure in . . . an amount equal to the sum of any actual damages to the borrower as a result of the failure. . . ."  *Id.* at § 2605(f)(1)(A).  To succeed on a claim under § 2605(e), a plaintiff must show: (1) the defendant is a servicer; (2) the defendant received a QWR from the borrower; (3) the QWR related to the servicing of the loan; (4) the defendant failed to respond adequately; and (5) the plaintiff is entitled to actual or statutory damages.  *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1292 (N.D. Ala. 2013).  The parties agree Goodreau sent BSI a QWR on October 26, 2018; Goodreau claims she sent a second QWR on December 13, 2018.  Each QWR is addressed in turn.

**1.    The October 26, 2018 QWR**

The undisputed facts show BSI received Goodreau's first QWR on October 29, 2018; it sent a written acknowledgement on November 5, 2018.  October 29, 2018 was a Monday, so BSI's acknowledgment the following Monday was sent on

11

the fifth business day after it received the QWR. Therefore, BSI's acknowledgement was timely under RESPA. 12 U.S.C. § 2605 (e)(1)(A). The undisputed facts also show BSI responded to the QWR via correspondence dated November 8 and November 16, 2018; both dates are well within the thirty-business-day statutory deadline. Thus, BSI's responses were timely under RESPA; to the extent Goodreau argues otherwise, this contention is belied by the record. 12 U.S.C. § 2605(e)(2); (*See* Doc. 64 at 36). Further, Goodreau has not presented any argument as to why BSI's response to the October 26, 2018 QWR was deficient. *Adams*, 237 F. Supp. 3d at 1205–06 (plaintiff's conclusory assertion QWR response was inadequate did not defeat properly supported motion for summary judgment). Accordingly, any RESPA claim based on this QWR fails. *See Buckentin*, 928 F. Supp. 2d at 1292-93.

### 2.    The December 13, 2018 QWR

Goodreau alleges she sent BSI a second QWR on December 13, 2018. (*See* Doc. 64 at 37).[9] Meanwhile, BSI has submitted an affidavit from a custodian of records averring BSI has no record of receiving the second QWR. More specifically, the custodian attests he has access to BSI's business records, has reviewed BSI's records regarding Goodreau, and has personal knowledge of how BSI maintains its business records. (Doc. 57-1 at 3). The affidavit explains BSI maintains a computer

---

[9] Goodreau's brief does not cite to the relevant portion of her testimony or other evidence in this regard. It appears the purported December 13, 2018 QWR is not included in the record.

database of "Loan Records"—which includes any customer correspondence—related to the loans it services. (*Id.* at 3-4). BSI enters all Loan Records contemporaneously with their receipt. (*Id.* at 4). The custodian avers "BSI has searched its records and has no evidence of having received the alleged December 13, 2018 QWR." (*Id.* at 9). This evidence is sufficient to overcome the common law presumption of receipt. *Kin Chun Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1348 (N.D. Ga. 2013). Moreover, another court sitting in this district has concluded a plaintiff asserting a RESPA claim based on a failure to respond to a QWR must include a copy of the QWR in the record. *McLaughlin*, 2018 WL 3126752 at *6.[10] For these reasons, there is no genuine issue of material fact and Goodreau's RESPA claims fail as a matter of law.

## E. FCRA

Goodreau's amended complaint alleges BSI falsely reported she was delinquent on her loan and was in default; she also claims BSI failed to conduct a reasonable investigation regarding the data it reported to the credit reporting agencies. (Doc. 23 at 26-27). Under the FCRA, furnishers of credit data have a duty to investigate when a credit reporting agency notifies them of a consumer dispute.

---

[10] "The Plaintiffs' failure to provide these two purported QWRs as evidentiary support of their contentions is fatal to their prima facie case, which requires in part that they show they sent a qualified written request consistent with the requirements of the statute. In the absence of these two QWRs, there is no way for the court to discern whether the Plaintiffs, in fact, sent documents that complied with the requirements of the statute. In other words, the Plaintiffs have failed to prove their claim." *McLaughlin*, 2018 WL 3126752 at *6

15 U.S.C. § 1681s-2(b).[11]

BSI argues it is entitled to summary judgment on this claim based on Goodreau's deposition testimony that she never contacted a credit rating agency or filed a dispute regarding her credit.  As such, BSI contends its duty to investigate was never triggered.  (Doc. 56 at 28).  In response to this linear argument, Goodreau does not cite to any evidence at all, much less evidence contradicting the portion of her deposition testimony on which the defendants rely.  Instead, Goodreau merely rests on the allegations in the amended complaint, while suggesting she has some undisclosed and undescribed evidence to support her FCRA claim.  (Doc. 64 at 25). While Goodreau's argument might be sufficient to survive a motion under Rule 12(b), it is insufficient at summary judgment.  *See Bias*, 2018 WL 2365428 at *8 (granting summary judgment to defendant on FCRA claim where plaintiff admitted she never contacted a credit reporting agency); *Adams*, 237 F. Supp. 3d at 1206-07 (same).  BSI had no duty to respond to a dispute which the undisputed facts show Goodreau never submitted.  Thus, there is no genuine issue of material fact, and Goodreau's FCRA claim fails as a matter of law.

## F.    FDCPA

Goodreau's claim under the FDCPA is aimed at BSI.  (Doc. 23 at 28).  The

---

[11] To the extent Goodreau's claims may be based on 15 U.S.C. § 1681s-2(a)(1)(A), there is no private right of action under this subsection. *Adams,* 237 F. Supp. 3d at 1206. Accordingly, BSI is entitled to judgment as a matter of law on any claims under § 1681s(2)(a). (*See* Doc. 56 at 28).

FDCPA "prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures." *Acosta v. Campbell*, 309 F. App'x 315, 319 (11th Cir. 2009). The statute provides plaintiffs with relief against debt collectors who violate the statute's provisions. In order to prevail on an FDCPA claim, a plaintiff must show: (1) they have been subject to collection activity based on a consumer debt; (2) the defendant is a debt collector under the statute; and (3) the defendant violated the statute. *Hunt v. 21st Mortg. Corp.*, No. 12-381-RDP, 2012 WL 3903783 *5 (N.D. Ala. 2012); *Vazquez v. Prof'l Bureau of Collections of Md., Inc.*, 217 F. Supp. 3d 1348, 1351 (M.D. Fla. 2016). Here, the primary focus of the briefing concerns whether BSI is a debt collector for purposes of the FDCPA. (*See* Doc. 56 at 29-38; Doc. 64 at 11-23; Doc. 65 at 10-14).

The FDCPA defines a debt collector as one which: (1) "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts"; or (2) "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Where an FDCPA plaintiff relies on the second prong described above, a defendant is not a "debt collector" if their debt collection

efforts "concern[] a debt which was not in default at the time it was obtained . . . ." 15 U.S.C. § 1692a(6)(F).

Because the undisputed facts show BSI is a mortgage servicer, it necessarily follows that the collection of debts is not the principal purpose of its business.[12] Accordingly, BSI's status as a debt collector under the FDCPA hinges on the second prong: whether it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).[13]

The defendants' brief in support of the motion for summary judgment cites to an unpublished Eleventh Circuit opinion concluding an enforcer of a security interest is not a debt collector under the FDCPA.  (Doc. 56 at 30); *see Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460-61 (11th Cir. 2009) (*per curiam* ) (alterations incorporated) ("An enforcer of a security interest, such as a mortgage servicing company foreclosing on mortgages of real property falls outside the ambit of the FDCPA except for the provisions of 1692(f)(6)" and "foreclosing on a home is not debt collection"); *see also Ausar–El ex rel. Small, Jr. v. BAC (Bank of Am.) Home Loans Serv. LP*, 448 F. App'x 1, 1 (11th Cir. 2011) (*per curiam* ) ("an enforcer

---

[12] This conclusion is supported by Goodreau's own allegations in the amended complaint.  (Doc. 23 at 15, 28-29) (alleging debt collection was among several purposes of BSI's business).

[13] Because Goodreau had defaulted via delinquent payments prior to the assignment to US Bank, BSI is not excluded as an FDCPA debt collector under § 1692a(6)(F).  However, the fact that Goodreau defaulted before the defendants' acquisition does not automatically render BSI a debt collector under the statute.  *See Davidson v. Cap. One Bank (USA), N.A.*, 44 F. Supp. 3d 1230, 1239 (N.D. Ga. 2014), *aff'd* 797 F.3d 1309 (11th Cir. 2015).

Case 2:19-cv-00269-SGC   Document 66   Filed 12/30/21   Page 17 of 19

of a security interest only qualifies as a 'debt collector' for the purpose of §

1692f(6)"); *see also Dunavant v. Sirote & Permutt, P.C.*, 603 F. App'x 737, 739–40

(11th Cir. 2015) (favorably discussing *Warren*'s holding).  While the foregoing is

not binding authority, it is nonetheless persuasive, as evidenced by decisions

rendered by other courts sitting in this district.  *See Adams*, 237 F. Supp. 3d at 1208

(granting defendant mortgage servicer's motion for summary judgment on FDCPA

claim because servicer's foreclosure was not debt collection); *see also  Janke v.

Wells Fargo & Co.*, 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011); *Carroll v. Bank

of Am., N.A.*, No. 12-2506, 2013 WL 1320755, at *4 (N.D. Ga. Mar. 28, 2013).

Goodreau's opposition does not provide argument or authority to overcome

the persuasive legal position advanced in the defendants' motion for summary

judgment.   Instead, Goodreau relies on conclusory assertions BSI was a debt

collector and violated the FDCPA.   (Doc. 64 at 11-23).   None of Goodreau's

arguments address whether BSI's business is to collect debts or whether it regularly

collects debts on behalf of third parties.  *See* 15 U.S.C. § 1692a(6).[14]  As another

court in this district noted in similar circumstances:

> Discovery is designed in part for a party to obtain the relevant evidence
> on an issue on which that party has the burden of proof, or . . . "to put
> up or shut up."  . . .  The Plaintiffs have failed to do so, and cannot

---

[14] To the extent Goodreau contends BSI is a debt collector for purposes of § 1692(f)(6), she would have to show: (1) there was no right to possession of the Property through an enforceable security interest; (2) lack of intention to take possession of the Property; or (3) the Property was exempt from nonjudicial foreclosure.  The undisputed facts do not support any of these conclusions.

support their FDCPA claim by ignoring the actual standard required under the law. In the absence of the requisite evidence to support the Plaintiffs' contentions, the court cannot find, as a matter of law, that the Defendants are debt collectors.

*McLaughlin*, 2018 WL 3126752 at \*8 (citation omitted).  For the foregoing reasons, there are no genuine issues of material fact and Goodreau's claims under the FDCPA fail as a matter of law.

### G.    Declaratory Judgment

Finally, Goodreau asserts a claim for declaratory relief based on the alleged wrongdoing of the defendants.  (Doc. 23 at 33).  Because the defendants are entitled to judgment as a matter of law on all other counts of the amended complaint, Goodreau cannot receive declaratory relief.  "Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction."  *Bias*, 2018 WL 2365428 at \*9 (quoting *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1316 (Fed. Cir. 2011). Accordingly, there are no genuine issues of material fact, and the defendants are entitled to judgment as a matter of law on Goodreau's claim for declaratory relief.

### V.    CONCLUSION

For all of the foregoing reasons, there are no genuine issues of material fact, and the defendants are entitled to judgment as a matter of law regarding all of Goodreau's remaining claims.  The motion for summary judgment (Doc. 55) will be

granted and Goodreau's claims will be dismissed with prejudice.  A separate order

will be entered.

**DONE** this 30th day of December, 2021.

_Staci G. Cornelius_
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE